Firm I.D. No. 13681                    7520.807                    JS/PG/ms

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NOLA C VAN DUYNE AND LEO VAN DUYNE, ) | | |
| ) | | |
| Plaintiffs, ) | No. 07 C 6857 | |
| ) | | |
| vs. ) | | |
| ) | Judge James Moran | |
| ) | | |
| ENCORE MEDICAL, L.P.; ENCORE ) | | |
| ORTHOPEDICS, INC.; and OSTEOIMPLANT ) | Magistrate Judge Nolan | |
| TECHNOLOGY, INC., ) | | |
| ) | | |
| Defendants. ) | | |

### AFFIDAVIT OF SCOTT WAY

I, SCOTT WAY, under oath depose and state that if called to testify I shall testify to the facts stated herein based on my personal knowledge:

1. My name is Scott Way.

2. I am over eighteen (18) years old.

3. I am Corporate Counsel of Encore Medical, L.P. (Encore). I have been the Corporate Counsel since 2004 and have been employed by Encore since 2004.

4. Encore was founded in 1992. It designs, manufactures, markets and distributes orthopedic surgery products around the world.

5. In 2005, Encore purchased certain assets of Osteoimplant Technology, Inc. (OTI). During the investigation and negotiations leading up to the purchase of OTI's assets, I became familiar with OTI's products. In 2004 and earlier, OTI was a manufacturer of medical devices. Included among the devices it manufactured was an artificial hip known as the Alfa II.

6. The OTI Alfa II hip prosthesis, serial number MR #021-03-83, that was implanted in Nola Van Duyne in November 2002 was not manufactured, sold or distributed by Encore. In 2002, Encore manufactured, sold and distributed its own line of artificial hips.

7. At the time that Encore entered into an asset purchase agreement with OTI, Encore was headquartered in Austin, Texas, and OTI was headquartered in Hunt Valley, MD.

8. The sale of the assets of OTI was completed in February 2005; three years after Nola Van Duyne had her hip replacement surgery. The sale was completed pursuant to the terms of an "Asset Purchase Agreement."

9. The Agreement provided that Encore would acquire substantially all the assets of OTI. The transaction was an arm's length transaction between two competitors. The two entities had different principals and there was no overlapping ownership. Both parties were advised by different financial advisors. After the asset purchase, none of the principals of OTI assumed roles in Encore.

10. The Agreement provided that Encore would purchase the assets of OTI, but not most of the liabilities. The Agreement provided that what was defined under the Agreement as "Retained Liabilities" would remain the sole responsibility of OTI. Included as "Retained Liabilities" was the responsibility to respond to product liability claims, such as the one brought by Nola Van Duyne.

11. I understand that Nola Van Duyne's artificial hip was implanted in November 2002. At that time, Encore had not purchased the assets of OTI, and had no connection or interest with the artificial hip that was implanted in Nola Van Duyne.

12. There were fundamental differences, particularly in the hip stems, between the

artificial hips sold by OTI and the artificial hips sold by Encore. After Encore purchased the assets of OTI, it took all remaining inventory of the OTI artificial hips off the market and redesigned the implant.

13.    Encore did not continue to sell the OTI Alfa II artificial hip that was implanted in Nola Van Duyne under the same design as implanted in Nola Van Duyne.

Scott Way
Corporate Counsel
Encore Medical, L.P.

Subscribed and sworn to before
me this 8th day of July, 2008.

Notary Public

KRISTINA S. AFONSO
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
SEPTEMBER 27, 2009